QUEEN OF ARKANSAS INSURANCE COMPANY *v.* FORLINES.

Opinion delivered March 14, 1910.

1. INSURANCE—COVENANTS—WAIVER.—A covenant in a policy of fire insurance that the insured will keep an inventory of his stock in an iron safe may be waived by the insurer either expressly by the assurance that it will not be insisted on, or impliedly by any acts or conduct of the insurer indicating that it will not be insisted on. (Page 231.)

2. SAME—AUTHORITY TO MAKE WAIVER.—A waiver of a covenant in an insurance policy may be waived by any authorized officer or agent of the insurance company; and an agent of the company who is intrusted with the apparent power to adjust the loss has the authority to waive provisions of the policy relative to the inventory and proof of loss. (Page 232.)

3. SAME—WHEN FORFEITURE WAIVED.—Any agreement, declaration or course of action on the part of an insurance company which leads a

party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by conformity on his part, will estop the company from insisting on the forfeiture. (Page 232.)

4. SAME—WAIVER OF FORFEITURE NOT REVOCABLE.—After an insurance company has once waived its right to declare a forfeiture, it cannot subsequently avoid the effect of such waiver. (Page 232.)

5. SAME—ABSENCE OF INVENTORY—WAIVER.—Where the insured had been in business only a month before the fire occurred, and had no inventory of his goods except the invoices, which were destroyed in the fire, but was told by the adjuster to procure duplicates of the invoices, which would serve as an inventory, and did so, the insurer will be held to have waived the necessity of an inventory. (Page 232.)

6. SAME—WAIVER OF PROVISION AGAINST WAIVER.—A stipulation in a policy of fire insurance that the conditions thereof shall not be waived by certain acts may be altered, changed, abrogated or waived by subsequent contracts or by conduct amounting to an estoppel. (Page 233.)

7. SAME—SUFFICIENCY OF INVENTORY.—Where the insured who had just opened his store kept a book showing each consignment of goods purchased by him, and the invoices giving each item of such consignments, he will be held to have substantially complied with the requirement of the policy to keep an inventory of his purchases. (Page 233.)

8. SAME—PROOF OF LOSS—WAIVER.—Denial by the insurer of liability, based upon reasons other than a failure to furnish proof of loss, constitutes a waiver of the provisions of the policy requiring proof of loss to be made. (Page 234.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*J. W. & M. House,* for appellant.

1. There was no waiver of proof of loss. 72 Ark. 484. The mere mailing of the proof of loss is not sufficient unless it reaches the company within sixty days. Ostrander on Ins. § 238, p. 541; 52 L. R. A. 956; 84 Ark. 224; 114 S. W. 210; 112 *Id.* 200; 82 Ark. 476; 72 Ark. 484; 56 Mo. App. 343; 73 N. Y. Supp. 193; 86 N. Y. sup. 24.

2. There was no compliance with the iron-safe clause. 85 Ark. 579; 83 Ark. 126. Nor was there any waiver by the company. 114 Iowa 153; 62 Iowa 387; 72 Ark. 490.

3. The court erred in giving and refusing instructions. 85 Ark. 579.

*Joel D. Conway* and *William H. Arnold,* for appellee.

1. Forfeitures are not favored in law. A denial of liability is a waiver of proof of loss. 53 Ark. 494; 77 Ark. 27; 13 Am. & E. Enc. of Law, 330; 85 Ark. 169.

2. The company is estopped by the knowledge and acts of its agents who inspected the stock. 79 Ark. 266; 81 Ark. 508, 205; 71 Ark. 295; 79 Ark. 315; 79 Ark. 266; 52 Ark. 15; 71 Ark. 242; 63 Ark. 187; 62 Ark. 348; 82 Ark. 150-162; 88 Ark. 506; 61 Ark. 108; 79 Ark. 315. Parol evidence was admissible to show a waiver by the agent. 88 Ark. 550; 74 Ark. 72.

3. There was a substantial compliance with the iron-safe clause. Kirby's Dig., § 4375a; 83 Ark. 130; 85 Ark. 33; 86 Ark. 119.

FRAUENTHAL, J. This is an action instituted by J. H. Forlines, the plaintiff below, against the Queen of Arkansas Insurance Company, upon a fire insurance·policy. The defendant executed its policy of insurance on October 14, 1908, by which it insured the plaintiff against loss by fire in the sum of $1,050, of which $600 was on his stock of goods, $250 on his fixtures and $200 on his household goods. The property was destroyed by fire on November 15, 1908.

A number of defenses were interposed against a recovery; and upon the trial in the lower court a verdict was returned in favor of the plaintiff. Upon this appeal only two of these defenses are specially urged for a reversal of the judgment.

1. It is contended by the defendant that the plaintiff violated the provisions of the policy contained in what is commonly known as the "iron-safe" clause thereof, and on that account is not entitled to recover. The policy provided: "The following covenant and warranty is hereby made a part of the policy. (1) The assured will take a complete itemized inventory of stock on hand at least once in each calendar year; and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned. (2) The assured will keep a set of books, which shall clearly and plainly present a complete record of the business transacted, including

all purchases, sales and shipments, both for cash and credit, from the date of inventory, as provided for in first section of this clause, and during the continuance of this policy. (3) The assured will keep such books and inventories, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in the policy is not actually open for business, or, failing to do this, the assured will keep such books and inventories in a place not exposed to a fire which would detroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of the company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The plaintiff began business in Texarkana, Ark., on October 9, 1908, and purchased all his goods from merchants in that city.

The goods were delivered at the store of plaintiff on drays, and the selling merchants made out invoices in duplicate of the goods as they were placed upon the dray, one of which was retained and filed away in a loose-leaf ledger and the other was sent by the drayman to plaintiff. As the goods were unloaded, the plaintiff checked same, and hung the invoice thereof on a hook in his store, and entered in a book kept by him the amount of each dray load of goods, the date received and the name of the merchant from whom same was purchased. All of his purchases were thus entered upon this book, and aggregated $1,401.60. This book also contained all cash which he paid to his creditors, and in it he also entered all cash and credit sales. This book was kept by plaintiff in his pocket, and was presented to the adjuster and also on the trial of the case. The invoices of the goods which plaintiff placed on the hook in his store were destroyed by the fire. About one week after the fire the adjuster of defendant came to plaintiff to negotiate relative to the adjustment of the loss. There was a sharp conflict in the evidence between the plaintiff and the adjuster as to what occurred between them, but the evidence on the part of plaintiff tended to prove the following: The plaintiff told the adjuster that the invoices which he had received from the merchants from whom he purchased the goods, and which constituted

the only itemized inventory that he had kept, had been destroyed by the fire; and he explained to the adjuster how he had kept same, and how he had entered same in said book. The adjuster thereupon directed the plaintiff to get duplicates of the invoices from the merchants who had sold him, and told him that they would answer the purpose of the inventory. The plaintiff then employed the entire day in securing duplicates of these invoices, and brought same to the adjuster, who, after having spent with plaintiff a considerable time in examining them and comparing them with the entries in said book, made no objection to them, but stated that some of the duplicate invoices were missing and to obtain them. Plaintiff thereupon at further trouble secured these missing duplicate invoices, and on the following day brought same to the adjuster.

The plaintiff testified that the adjuster then told him that he would not settle at all, and that the company did not owe him anything and would not pay him. The adjuster testified that he did not deny or admit liability; but we think there is sufficient evidence to sustain the finding that the adjuster did then deny that the defendant was liable on the policy. It is contended by the plaintiff that a forfeiture of the policy for a failure to comply with the provisions requiring an itemized inventory of the stock to be taken and to be kept in an iron safe or a place not exposed to the fire was waived by the adjuster of the company. The question relative to the waiver was submitted to the jury under proper and appropriate instructions, and the sole question upon this appeal relative thereto is whether or not the above evidence is sufficient to sustain the finding of the jury that there was such waiver. By the above provisions of the policy the plaintiff "covenanted" to make and keep in an iron safe or in a safe place an inventory of the stock, but the breach of that covenant did not itself, in the true interpretation of the contract, invalidate or nullify the policy. Such a breach only gave a right to the insurance company, if it saw fit, to declare that by reason thereof it would not be further bound thereby. It was a condition that was inserted for the benefit of the defendant, and it had the right to waive that condition, if it did not desire to insist upon a strict compliance with it. Such a requirement or condition of the policy may be waived, either ex-

pressly by the assurance that it would not be insisted on, or impliedly by any acts or conduct of the insurance company indicating that it would not insist upon the provisions as required by the conditions or stipulations of the policy, or which would be inconsistent with such requirements. Such waiver may be made by any authorized officer or agent of the company; and an agent of the company who is intrusted with the apparent power to adjust the loss has the authority to waive the provisions of the policy relative to the inventory and proof of loss. As to what acts will constitute a waiver of the forfeiture of the policy by reason of a breach of its conditions, this court in the case of *Phoenix Insurance Co.* v. *Fleming,* 65 Ark. 54, quoted with approval the rule formulated by the Court of Appeals of New York as follows: "The rule is now established that if, in any negotiations or transactions with the assured after knowledge of the forfeiture, the company recognizes the continued validity of the policy, or does acts based thereon, or requires the insured to do some act or incur some trouble or expense, the forfeiture is waived." In the case of *German Insurance Company* v. *Gibson,* 53 Ark. 494, this court said: "Forfeitures are not favored in law; any agreement, declaration or course of action on the part of an insurance company which leads a party insured to honestly believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by conformity on his part, will estop the company from insisting upon the forfeiture." *Planters' Mutual Ins. Co.* v. *Loyd,* 67 Ark. 584; *Minneapolis F. & M. Mutual Ins. Co.* v. *Fultz,* 72 Ark. 365.

And after the company has once waived its right to declare a forfeiture it cannot subsequently avoid the effect of such waiver. *German Insurance Co.* v. *Gibson, supra;* 19 Cyc. 872.

In the case at bar, according to the plaintiff's testimony. upon the arrival of the adjuster one week after the fire he told him that the only inventory he ever had was the entries on his book showing the totals by the dray loads and the invoices showing the items of the dray loads which had been destroyed by the fire. With full knowledge of these facts the adjuster told the plaintiff to obtain duplicates of these invoices, and that this would serve all the purposes of the inventory. He thus led the plaintiff to believe that the policy was still a valid contract, and

that by a compliance with the requirement then made to obtain these duplicate invoices the forfeiture of the policy would not be insisted on. The plaintiff complied with the requirement; and we are of opinion that there is sufficient evidence to sustain the finding that the adjuster waived any forfeiture on account of any failure to strictly comply with this condition of the policy.

It is urged by counsel for defendant that there is also a stipulation in the policy which provides that the insured shall, as often as required, produce for examination of its agents all invoices, if the originals are lost, and that the company shall not be held to have waived any condition of the policy or any forfeiture thereof by any requirement relative to any such examination; and that by reason of this stipulation the act of the adjuster in asking for duplicates of the invoices could not waive the condition of the policy relative to the inventory. But the invoices referred to in this stipulation relate only to the invoices of the goods purchased after the inventory is made. In the case at bar the plaintiff had only been in business for one month prior to the fire, and the invoices of the goods purchased during that time did in effect constitute the inventory of the stock required by the policy. Such was the understanding of the parties at the time, for the adjuster said that such invoices would serve the purpose of the inventory. In the estimation of the adjuster these invoices of the goods first bought by the plaintiff would in effect constitute the inventory of the stock required by the policy. We do not think therefore that these duplicate invoices which the adjuster directed the plaintiff to obtain are the character of invoices referred to in the above stipulation which the plaintiff should produce for examination of its agent. Furthermore, the conditions of the policy and the stipulations in the policy that the conditions thereof shall not be waived by certain acts are but contracts themselves, and, like the conditions themselves or other agreements, can always be altered or changed or abrogated or waived by subsequent contracts, or they can be waived by acts and conduct amounting to an estoppel. 19 Cyc. 777.

But we are further of the opinion that the entries made in his book by plaintiff of each consignment of goods, with the references therein to the merchants from whom such consignment was received, in connection with the invoices which were

kept by such merchants giving each item of each consignment, constituted a substantial compliance with the provisions of the policy relating to the inventory that was to be made and kept; and this book and these invoices were kept at places not exposed to the fire. The entries in the book showed the total of each consignment of goods, with the date thereof and the name of the merchant from whom same was purchased. The merchants from whom the goods were purchased retained the itemized statements of these goods, and from these merchants these itemized statements could be, and in this case were actually, obtained. In effect, the duplicates of the statements were the same as if the statements originally furnished to the plaintiff had not been destroyed but had been preserved. These statements gave the items of the goods purchased. The book which the plaintiff kept, showing in totals the stock of goods, was an index to these statements which were kept in a place safe from the fire and thus became a part of the book, and these, taken together, constituted an itemized inventory of the goods which the plaintiff had in stock. Our statute provides that substantial compliance upon the part of assured with the terms, conditions and covenants of fire insurance policies on personal property shall be deemed sufficient. Kirby's Digest, § 4375a; *Arkansas Mutual Fire Ins. Co.* v. *Woolverton,* 82 Ark. 476.

The object and purpose of the provisions in the iron-safe clause in requiring an itemized inventory to be made and kept and the keeping of books showing all purchases, sales and shipments was to obtain from these a complete record of the business, so that from these it could be ascertained what amount of goods was on hand at the time of the fire. In the case at bar the plaintiff had been in business such a short time that the invoices of the goods first bought by him constituted in effect an itemized inventory of his stock. The case of *Arkansas Insurance Co.* v. *Luther,* 85 Ark. 579, is not in conflict with this holding. In that case there was no itemized inventory of the stock, but the different classes of goods were "set down in lump." It was only a summary showing the total valuation of each class of goods, without giving the items thereof or indicating where the items thereof could be found.

2. It is urged by the defendant that the plaintiff did not

furnish proof of loss within sixty days after the fire, as required by the policy, and by its terms the policy was thereby avoided. The fire occurred on November 15, 1908, and proof of loss was mailed to defendant on January 14, 1909, but was not received by it at its home office until January 15, 1909. But from the testimony on the part of the plaintiff set out above we think there was sufficient evidence to sustain a finding that the adjuster denied liability when he saw the plaintiff one week after the fire; and by the repeated rulings of this court a denial of liability, based upon reasons other than a failure to furnish proof of loss, constitutes a waiver of the provisions of the policy requiring proof of loss to be made.    *German Ins. Co.* v. *Gibson,* 53 Ark. 494; *Planters' Mutual Ins. Co.* v. *Hamilton,* 77 Ark. 27; *Yates* v. *Thomason,* 83 Ark. 126.

We have examined the other assignments of error made by the defendant, and we do not find that any of them are well founded.

Finding no prejudicial error in the trial of this case, the judgment is affirmed.