Syllabus.

## Richmond.

## NORTH BRITISH AND MERCANTILE INSURANCE COMPANY V. ROBINETT & GREEN.

November 16, 1911.

1. FIRE INSURANCE—*Appraisal of Loss—Condition Precedent.*—A stipulation in a fire insurance policy for an appraisal is valid, and if the policy further provides that no action shall be maintained upon it until after an award by arbitrators is made as to the amount due upon it, then the award is a condition precedent to a right of action on the policy. The award is a necessary element of the plaintiff's cause of action, if demanded at a time when the company has a right to demand it, and it can be made.

2. INSURANCE—*Policy—Construction—Compliance With Provisions.*—Contracts of insurance are to be liberally construed in favor of the assured, but the policy is a contract, and it is just as much the duty of the assured to comply with its plain provisions, as it is the duty of the insurer to pay the amount of the loss, when the amount has been properly ascertained in accordance with the terms of the contract.

3. FIRE INSURANCE—*Appraisals—Time for Demanding—Waiver.*—Where a fire insurance policy provides that the loss, if any, thereunder shall not become due until sixty days after the proof of loss has been delivered, including an award by appraisers, if an appraisal should be required, the insurer has the right at any time, within sixty days after the proof of loss is delivered, to demand an appraisal, and this right is not waived by the failure of the representative of the company, before he has completed his investigation as to the loss, to make any answer to the enquiry of the assured's attorney as to whether or not he desired an appraisal, provided the appraisal was in fact explicitly demanded within the time above specified.

4. WAIVER—*Knowledge of Facts—Estoppel by Conduct.*—A waiver to be effective against the party making it, must have occurred with full knowledge of all material facts, and must be distinctly made; and, in order for there to be an estoppel by conduct, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct.

Error to a judgment of the Circuit Court of Wise county in an action of assumpsit. Judgment for the plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Geo. W. St. Clair* and *Bond & Bruce,* for the plaintiff in error.

*Morton & Parker* and *W. S. Cox,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

This suit is brought upon a policy of insurance issued by plaintiff in error to defendants in error insuring the latter against loss or damage by fire to their stock of merchandise, situated at Appalachia, Wise county, Va., for the period of one year from the date and delivery of the policy, not to exceed three-fourths of the actual cash value of each item of property insured at the time of loss or damage, less the amount covered by any concurrent insurance, not to exceed, however, $1,500, while contained in a certain building in the town of Appalachia, the consideration for the insurance being the premium mentioned and the performance on the part of the insured of the conditions and stipulations set forth in the policy.

A fire occurred April 17, 1909, at about 11:30 o'clock P. M., in a building not owned by or connected with the property of the insured, which rendered necessary the removal of their stock of goods. None of the goods were destroyed or damaged by fire or smoke, but were damaged, according to the claim made by the insured, fifty *per cent.* of their value, or to an amount somewhat exceeding $2,000 by their removal from and back into the same building.

Among the almost innumerable provisions contained in the policy and found in practically all like policies of in-

surance, is one which provides that in case of loss, if the assured and insurer differ as to the loss sustained, then an appraisal of the property is to determine the amount of the loss.

The policy contains these provisions also: "The loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by the company, including an award of appraisal where appraisal has been required."

"No suit or action on the policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

On the next day after the fire, to-wit: April 18, 1909, the insured notified the insurance company of the fire and the damage to their stock of goods; they also notified the agent of the company, who resided at Appalachia, and who had issued the policy in question, countersigned it and collected the premium thereon. Neither the company nor its agents made any reply to the notices, and on May 15, 1909, proof of the loss was forwarded by the insured and was received by the insurance company on May 18, 1909. In the early part of June, 1909, the company sent one C. L. Garnett, an adjuster and an employee of the Virginia Adjustment Bureau, to Appalachia, to adjust the loss on the building which contained the stock of goods of plaintiffs insured, and also to adjust the loss of another insurance company which had issued a policy on the same stock of goods. After Garnett left Richmond for Appalachia, the insurer (plaintiff in error) also employed said Virginia Adjustment Bureau to adjust their loss; and all of the papers pertaining to the fire of April 17, 1909, were mailed from Richmond, addressed to Garnett at Appalachia, but Garnett never received them, and on returning to Richmond he so notified R. M. Friend, president of the Adjustment Bureau. Friend

had the papers returned to Richmond, and on June 29, 1911, he went to Appalachia to adjust the loss, but after examining the stock of goods, getting such information as he could, and consulting Garnett, who had examined the stock of goods soon after the fire, demanded an appraisal in accordance with the conditions of the policy, which demand was made in writing by letter of July 2, 1909, addressed to and received by the insured's counsel July 5, 1909, the said letter being as follows:

"Richmond, Va., July 2nd, 1909.
"Messrs. Morton & Parker, Attorneys,
    "Appalachia, Va.
"Dear Sirs:
    "We are in receipt of papers purporting to be proofs of loss under policy No. 4962619 of the North British & Mercantile Insurance Company, issued in the name of Robinett and Green.
    "The amount of loss and damage named therein is excessive, and we respectfully demand an appraisal in accordance with the terms and conditions of the policy.
    "Expressly reserving all rights of the company under the policy contract, we are,
                "Yours very truly,
                    "(Signed)    Robert M. Friend,
                                            "President."

To this letter the insurance company received the following reply:
                "Gate City, Va., July 6, 1909.
"Mr. Robert M. Friend,
        "Richmond, Va.
"Dear Sir:
    "In your letter of July 2, and received on July 5, 1909, in reference to the Robinett and Green claim, you used this expression: Expressly reserving all rights of the company under the policy contract, we are, &c.

"Please explain what you mean by this statement so that we will know just how to answer you. You will recall that Mr. Parker asked you the direct question as to whether you wanted an appraisal, and you at that time gave him no definite answer. That occurred more than one month ago. So please let us know by return mail what you mean, and we will give you an answer.

"Yours truly,

"(Signed)    W. S. Cox."

Considering, doubtless, that the letter of July 2nd, *supra*, required no explanation, the company made no reply to the letter of Attorney Cox, and thereafter, while there was some correspondence between counsel for the respective parties, practically nothing was done by either party towards an adjustment of the loss of the insured, and this suit was instituted on December 3, 1909.

At the trial of the cause, upon the defendant company's plea of non-assumpsit, the grounds of its defense stated in writing were:

(1) "No ascertainment or estimate was agreed upon as provided in said policy; the parties differed as to the amount of the loss or damage; the same has not been determined by appraisals as provided in the policy; the plaintiffs did not demand an appraisal as required by the policy. An appraisal was demanded by the defendant in accordance with the terms and conditions of the policy, and they failed, declined and refused to have an appraisal, as required by the policy."

(2) "That the three-fourths value clause was attached to the policy, and was made one of the conditions and provisions of same."

(3) "That the policy sued on was for $1,500, and $2,000 concurrent insurance was permitted. Another company issued a policy for $500, and appellees collected same, therefore if plaintiffs were entitled to recover anything, they

were only entitled to recover three-fourths of the actual damage to said property, less $500 heretofore paid them."

After the evidence of the respective parties had been introduced and the court had instructed the jury as to the damages they were to assess, the defendant company demurred to the evidence and the plaintiffs joined in the demurrer, which demurrer the court overruled and gave judgment on the verdict of the jury, assessing plaintiffs' damages at $1,500, with interest, to which judgment this writ of error was awarded.

There are two assignments of error, the first relating to the ruling of the court on the demurrer to the evidence; and the second to the instruction given by the court to the jury on the amount of damages to which the defendants in error were entitled under the policy sued on, if entitled to a recovery at all; but in the view we take of the case it will be only necessary for us to consider the first assignment, which presents the question, whether or not this action has been brought prematurely, the plaintiffs in error having declined or failed to enter into an appraisal of their loss as provided for in the policy sued on, and demanded. This question has not been directly passed on by this court, but has been by the Supreme Court of the United States and by the appellate courts of a number of the States.

In *Hamilton* v. *Liverpool, &c., Ins. Co.,* 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419, it is said in the opinion by Mr. Justice Gray, that a stipulation in a policy of insurance for appraisal is uniformly held in this country and England to be valid, and is a condition precedent to the right of recovery; and in *Hamilton* v. *Home Ins. Co.,* 137 U. S. 370, 11 Sup. Ct. 133, 34 L. Ed. 708, the opinion by the same learned judge holds that if the contract of insurance further provides that no action upon it shall be maintained until after an award by arbitrators is made as to the amount due upon it, "then, as was adjudged in *Hamilton* v. *Liverpool,*

*London & Globe Ins. Co.,* above cited and many other cases therein referred to, the award is precedent to a right of action on the contract." See also *Carroll* v. *Girard Ins. Co.,* 72 Cal. 297, 13 Pac. 865; *Mossness* v. *German Am. Ins. Co.,* 50 Minn. 341, 52 N. W. 932, and *Graham* v. *same defendant,* 75 Ohio 374, 79 N. E. 930, 15 L. R. A. (N. S.) 1055; *Grady* v. *Home Ins. Co.,* 27 R. I. 435, 63 Atl. 173, 4 L. R. A. (N. S.) 292; *Dunton* v. *Westchester F. Ins. Co.,* 104 Me. 372, 71 Atl. 1037, 20 L. R. A. (N. S.) 1058.

In *Carroll* v. *Girard Ins. Co., supra,* the opinion, referring to the view uniformly taken, that stipulations for an appraisal are a condition precedent to the right of action on a policy of insurance, says: "The logical result of this view is that the award is a necessary element of the plaintiff's cause of action."

In *Grady* v. *Home F. Ins. Co., supra,* it is held that, "Arbitration as to the amount of the loss is a condition precedent to an action on an insurance policy, where the policy expressly provides that no action shall be sustainable until full compliance with all conditions, one of which is that in case of dispute the amount of loss shall be fixed by arbitration. Failure of arbitration through no fault of the insurance company does not abrogate a provision in the policy that no action shall be brought until the amount of the loss has been settled by arbitration, and there is nothing to show that arbitration has become impossible." Citing *Hamilton* v. *Home Ins. Co., supra,* and a large number of other cases.

The opinion in *Hamilton* v. *Home Ins. Co., supra,* further says: "The manifest intention of the agreement of the parties to the contract of insurance was that any difference arising between them as to the amount of loss or damage of the property insured shall be submitted at the request in writing of either party, to the appraisal of competent and impartial persons, to be chosen as therein provided, whose

award shall be conclusive as to the amount of such loss or damage only, and shall not determine the question of the liability of the company. . . . The appraisal, when requested in writing by either party, is distinctly made a condition precedent to the payment of any loss, and to the maintenance of any action. Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authority in England and in this country." (Citing a number of authorities.)

"Where the parties, in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so."

Contracts of insurance, as counsel for defendants in error agree and the authorities hold, are to be liberally construed in favor of the assured, but the policy is a contract, and it is just as much the duty of the assured to comply with the plain provisions of the policy as it is the duty of the insurer to pay the amount of the loss, when that amount has been properly ascertained in accordance with the terms of the contract.

The case of *Tilly* v. *Insurance Co.*, 86 Va. 811, 11 S. E. 120, is cited in support of the contention that a stipulation in a policy of insurance for an appraisal is not a condition precedent to a right to recover on the policy, but with respect to that case we need only to say that it merely disposed of the question as to what should be alleged in a declaration on an insurance policy in view of section 3251 of the Code, and

96

what is there said has no sort of bearing upon the question here under consideration. Very true, the opinion in the case cited does refer to the provision in the policy that suit thereon could only be brought within one year from date of a loss, and says that it would be an unreasonable construction of the policy that the award stipulated for in the policy could be asked for just before the expiration of the year and thus defeat all recovery; but such is not the case here.

Nor does the case of *Sommerfield* v. *North British, &c., Ins. Co.,* (C. C.) 62 Fed. Rep. 249, which had under review a similar policy of insurance to that here in question, sustain the contention of defendants in error. In that case Paul, J., did hold that the plaintiff had the right to bring and maintain an action on her policy, although there had been no appraisement of the loss sustained by her for which she claimed damages, but this ruling was upon the peculiar facts of that case, and could not have been intended to impair the force and controlling influence of the decisions of the Supreme Court of the United States referred to above. On the contrary, the case considered by Judge Paul was by him distinguished from those cases upon the ground that the defendant company refused to submit to an appraisement, except upon the terms of the form of submission proposed by it; whereby, says the opinion, "it placed itself in the attitude of the plaintiff, Hamilton, in the case of *Hamilton* v. *Liverpool, &c., Ins. Co.,* and under the authorities of the cases there cited judgment must be entered in this cause for the plaintiff."

The decisions of this court in *The Liquid Carbonic Co.* v. *Norfolk & Western Ry. Co.,* 107 Va. 323, 58 S. E. 569, 13 L. R. A. (N. S.) 753; *Atlantic Coast Line R. Co.* v. *Bryan,* 109 Va. 523, 65 S. E. 30, and *Va.-Car. Co.* v. *Southern Ex. Co.,* 110 Va. 666, 66 S. E. 838, by analogy have an important bearing in the consideration of the issue we now have in hand.

In the first two of the cases just cited, it is held that a condition in a bill of lading, that claims for loss or damage shall be made in writing to the carrier's agent at the point of delivery promptly after the arrival of the property, and if delayed more than thirty days after the delivery of the property or after due time for the delivery thereof, there shall be no liability upon a carrier, is a reasonable provision, and will be upheld; that such a provision contravenes no public policy and excuses no negligence, but is a reasonable regulation for the protection of the carrier from fraudulent imposition in the adjustment and payment of claims for goods alleged to have been lost or damaged; and that such a provision in the contract, unless waived, is enforceable by the carrier in bar of any action by the shipper for such loss or damage.

In the third case last cited it was held that a provision in a receipt given by an express company for the carriage of goods, that the company shall not be liable for any loss or damage unless the claim therefor shall be presented in writing to it at the office of issue within thirty days from its date, is a reasonable and binding provision which must be complied with according to its tenor, otherwise the company cannot be held liable.

Defendants in error in this case contend, however, that notwithstanding the existence of the general rule with respect to the construction of a contract of insurance and the enforcement of its provisions in the cases we have cited, and the almost innumerable authorities cited in those cases, they escape the effect of the rule by invoking the doctrine of waiver. It is not claimed that there was any agreement on the part of plaintiff in error to waive the right it had to an appraisal under the provisions of the policy sued on, but it is claimed that it is estopped by the conduct of its agents to claim the benefit of that provision in the policy.

There is practically no conflict in the evidence introduced

in the case, and the facts appearing therefrom are as fol-lows: Both defendants in error testify that notice was given promptly of the fire, which occurred on April 17, 1909, as required by the policy; that a month afterwards they forwarded proof of loss to plaintiff in error, which was received by the latter May 18, 1909; that no other commu-nications were had between the parties until June 29, 1909, when Friend, agent of plaintiff in error, went to Appala-chia, at which time he secured certain information in ref-erence to the loss, and after returning to Richmond ob-tained further information from Garnett, who had ex-amined the stock of goods a few days after the fire. When fully informed as to the actual loss, Friend, on July 2, 1909, wrote the letter of July 2nd to Messrs. Morton & Parker, attorneys, saying that the amount of the loss as claimed in the proof of loss—$1,753.42—was excessive, and demanded an appraisal in accordance with the conditions of the policy.

The policy provided that defendants in error should have sixty days from the date of the fire to make out and deliver the proof of loss, and that the loss should not become due until sixty days after the proof of loss had been delivered, including an award by appraisers, if an appraisal should be required. Equal rights were contemplated in the con-tract to each of the parties thereto, sixty days being given to furnish proof of loss on the part of insured, and sixty days after the proof of loss had been furnished the insured could demand payment; and, clearly, during all of the last mentioned sixty days the insurer was to have the right to investigate the amount of the loss and its liability therefor. It is equally as clear that the insurer was given the right at any time within the sixty days after the proof of loss was delivered, to demand an appraisal, which it did. May on Insurance (4th ed.), sec. 479; Joyce on Insurance, sec. 3182.

It further appears from defendants in error's own testi-

mony that the appraisal could have been had when the demand therefor was received, on July 5, 1909, and later—in fact, until defendants in error, without responding to the demand for an appraisal or requiring one themselves, had sold off a part of the insured goods and so intermingled the balance with other goods that a satisfactory appraisement could not be had.

It will not do to say that there was no disagreement as to the loss and therefore no reason for an appraisal, when the letter of July 2, 1909, demanding the appraisal distinctly stated that the writer, as the agent of the insurer to adjust the loss, considered the claim made in the proof of loss furnished it excessive. Nor is there any merit in the contention that plaintiff in error waived its right to an appraisal when Friend, the adjuster, made no answer to an attorney for defendants in error when he asked Friend on June 29, 1909, the question, "Mr. Friend, do you want an appraisal in this case? If you do, we will give it to you." Friend testifying in this case neither affirms nor denies the statement of said attorney, Parker, that he made no reply to the question asked him, but states that he, on the occasion referred to, had very little talk with Parker, and was not then ready to talk about an adjustment of the claim asserted by defendants in error. It also appears that Friend had gone to Appalachia for the purpose of investigating this loss, went to the store of defendants in error, and after looking at the stock of goods was not satisfied, but wanted to secure further information from Garnett, who had seen the goods in their original damaged condition; that it was after getting full information that Friend wrote the letter of July 2, 1909.

It is a well settled principle with respect to the doctrine of waiver, applicable as well to insurance transactions as to other business dealings, that a waiver, to be effective against the party making it, must have occurred with full

knowledge of all material facts, and must be distinctly made. And in order for there to be an estoppel by conduct, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct. *Atlantic Coast Line* v. *Bryan, supra; Va.-Carolina Co.* v. *Southern Express Co., supra,* and authorities cited.

There is no proof whatever in the record to make available to defendants in error either the doctrine of waiver or estoppel, and the loss of the right to institute and maintain this action is due to their dereliction alone.

For the foregoing reasons, the judgment of the circuit court against plaintiff in error upon its demurrer to evidence is erroneous and will be reversed and judgment entered by this court for defendant in the court below, plaintiff in error here.

*Reversed.*