# Day *v.* Home Insurance Co.

## *Assumpsit.*

(Decided February 17, 1912. Rehearing denied May 1, 1912. 58 South. 549.)

1. *Insurance; Forfeiture; Taking Inventory.*—A covenant in a fire insurance policy avoiding the policy upon a failure of the insured to take an inventory within 30 days from its issuance, and to take a yearly inventory, is reasonable.

2. *Same; Invoice; Inventory.*—Under a fire insurance policy covering a stock of goods in a warehouse, containing a covenant for its avoidance unless an inventory should be taken within 30 days, an "inventory" meant a list made by the merchant of the goods in his store; and though an invoice is also a list of goods, it is made by the consignor at the point of shipment, and does not show that the goods therein listed have ever reached the consignee, or what portion thereof has been sold, and the requirements of the policy would not be met by the invoices of the insured, plus his books.

3. *Same; Modification of.*—Where, at the time a fire insurance policy covering a stock of goods in a warehouse was transferred to cover another stock located therein, the agent of the insurance company knew that the goods were in original packages, and that an

[Day v. Home Insurance Co.]

inventory could or would be kept, and did not object to the failure to make such inventory, there was a modification in the original policy in respect to the stipulation for an inventory.

4. *Same; Contracts; Construction.*—Generally contracts of insurance are construed most strongly against the insured, but where there is no occasion for construction, the contract must be construed and enforced according to its clear and unambiguous meaning, and the courts may not disregard its plain provisions and construct by implication or otherwise, a new agreement, on the ground that the purposes which the parties intended to secure may have been unnecessary, or as well secured by other means.

5. *Bankruptcy; Collection of Assets; Agreement by Bankrupt.*— Although a bankrupt can do nothing in derogation of the estate, an agreement between insured bankrupt and insurer that the investigation of a loss should not constitute a waiver of the avoidance of the policy for failure to take an inventory, will bind the bankrupt's estate, where the agreement was signed by the insured in the presence of and with the advice of the receiver of the bankrupt estate; and such an agreement was not invalid as an act by a bankrupt in derogation of the interests of the bankrupt estate, since it operated for the benefit of the estate.

(Sayre, J., dissents in part. ).

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by J. L. Day, as trustee in bankruptcy, against the Home Insurance Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The iron-safe clause is as follows: "The following covenant and warrant is hereby made a part of this policy: (1) The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned. (2) The assured will keep a set of books, which shall clearly and plainly present a complete record of the business transactions including all pur-

chases, sales and shipments, both for cash and credit from date of inventory as provided for in the first section of this clause and during the continuance of this policy.    (3) The assured will keep such books and inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventories in some place not exposed to fire which would destroy the aforesaid building.    In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

Special replication C is as follows:    "The policy of insurance here sued on was originally written to cover a risk located at lot No. 3, block 2, Main street, Hartselle, Ala., subsequent thereto, and on the 2d day of February, 1910, the policy of insurance was transferred by written indorsement thereon so as to cover a stock of general merchandise located in general merchandise warehouse as described in the complaint.    That said transfer was made by one Arthur Stephenson, general agent of the company, and that, at the time the transfer was made, said Stephenson had notice that said policy of insurance was to cover goods purchased by said Harmon from wholesale dealers.    Said Harmon informed said Stephenson that the insurance rates in the building where the goods covered by said policy of insurance were originally located were so high that he was unable to carry insurance on his stock of goods in said building; that he desired insurance on the goods located in his warehouse, being the warehouse containing the goods on which said policy of insurance was

transferred. The said Stephenson, as agent of the defendant, was informed, or had notice of the fact, that said goods would not be kept for sale in said warehouse, and that said goods would remain in the original packages and would not be opened by said Harmon, but that such of said goods would be transferred from said warehouse to said storehouse, as it was necessary for the said Harmon to transfer in the conduct of his real estate business located some distance from said warehouse. That said Stephenson, as agent of the defendant, had notice that said goods would remain in the original packages or boxes in which they were shipped, and would not be opened, and with notice of this fact, and with notice of the fact that by reason thereof it would be impossible to make an inventory of said goods as required by said policy of insurance, the defendant did not make objection to the failure of said W. C. Harmon to make an inventory of said goods as required by said policy, nor did it return to the insured the unearned premiums thereof. The defendant had a reasonable time within which to make such objection and defense, cancellation, and repayment after notice and before the loss occurred."

The demurrers are that no facts are alleged which excuse the assured from taking the inventory which he agreed to take; it is not shown that the defendant knew that the assured could not take the inventory he agreed to take at the time of the consent to the removal of the goods; it is not shown why an inventory could not have been taken of the goods in said warehouse; the assured is not excused from taking the inventory he agreed to take by keeping his said goods in the original packages, and in such condition as rendered the taking of an inventory impracticable; and it is not shown that the defendant or any authorized agent would or did

abrogate the provisions of the policy requiring an inventory to be taken.

TIDWELL & SAMPLE, and E. W. GODBEY, for appellant. The court erred in sustaining replications 1 and G to the 3rd plea. The original invoices, minus the aggregate of the goods sold and goods in a distant warehouse, were a complete substitute for an inventory. *Q. of A. I. Co. v. Forlines*, 126 S. W. 719; *Ruffner v. Dutchess I. Co.*, 115 Am. St. Rep. 924; *McNutt v. Va. F. & M. I. Co.*, 45 S. W. 61; *Wes. I. Co. v. Redding*, 68 Fed. 708; 27 Pac. 713; 6 Pac. 62. Both insurance policies and conditions subsequent are construed most strongly against the insurer.—*Yancey v. Sav. R. R. Co.*, 101 Ala. 234; 54 Am. St. Rep. 486; 108 Fed. 497; 61 Am. St. Rep. 627; 13 Wall. 158; 70 L. R. A. 742; 13 Am. St. Rep. 420; 59 Fed. 96; 68 L. R. A. 189. The iron safe clause has no office to perform with respect to articles not in a transition state by constant disposition from and addition to the mass, and the court therefore erred in sustaining demurrers to the 3rd replication to plea 3, replications G, E, D, and 2D, and to special replication to pleas 3, 4 and 5.—*Traders I. Co. v. Lecher*, 39 South. 271. When the insurer knows that certain stereotyped requirements will not and cannot be complied with, because of the character of the enterprise or property insured no breach can be availed of. The court therefore erred in sustaining demurrers to special replication C.—27 South. 745; 48 Am. St. Rep. 535; 10 S. E. 580; 61 S. E. 403; 61 S. E. 905; 100 N. W. 937. The filing of a bankruptcy proceeding against the insured forever terminates all power or right of the insured, or anyone else to interfere in derogation of the interest of the estate, when followed by a trustee and his assertion of title.—*In re Duncan,*

148 Fed. 464; *State Bank v. Cox,* 16 Am. Bankruptcy Rep. 36; 112 Fed. 310; 104 Fed. 326. The nonwaiver clause could not be construed to apply to the rights of the creditors, the existing receiver or the prospective trustee.—108 Fed. 497.

CALLAHAN & HARRIS, and STEINER, CRUM & WEIL, for appellee. The warehouse was shown to be only a feeder for the retail store, and there was just as much room for the operation of the iron safe clause as in a case where the goods were placed in a retail store in the first instance, as there is a continual shifting of the goods, and a consequent chance for fraud.—*Ins. Co. v. Crawford,* 121 Ala. 262. The preservation and production of the invoices of the goods is not a substantial compliance with the provision of the policy requiring a complete itemized inventory of the stock—19 Cyc. 762; 2 Cooley's Briefs, 1820; 61 S. W. 962; 52 L. R. A. 70; 15 South. 932; 38 South. 87; 48 S. W. 559. While it is admitted that a contract of insurance is construed most strongly against the insurer, it is also true that where the contract is clear and unambiguous, there is no room for a construction, and the contract must be given its clear intendment.—*Tubb v. L. L. & G. I. Co.,* 106 Ala. 660; *Imperial F. I. Co. v. Coosa County,* 151 U. S. 463. One of the purposes of the iron safe clause is to facilitate the ascertainment of the exact loss in case of fire. —*Crawford's Case, supra; Allen's Case,* 119 Ala. 449; *Dwight v. I. Co.,* 103 N. Y. 341; 38 South. 88. No forfeiture was shown by the agreement to attempt to ascertain the loss.—*Queen I. Co. v. Young,* 86 Ala. 432; *Ala. S. M. A. Co. v. Long C. & S. Co.,* 123 Ala. 675; 19 Cyc. 712, 789; 129 Fed. 807. As to the rights of the receiver and insured between the time of filing the petition and the appointment of the trustee, see 15 L.

R. A. (N. S.) 831. Replication C, among other defects, seeks to predicate a waiver of the iron safe clause upon notice to the insurance company, whereas, knowledge is a prerequisite to a waiver.—*Trader's I. Co. v. Letcher, supra; Allen's Case, supra; Bunts' Case*, 131 Ala. 595; 105 U. S. 359; 6 Am. Rep. 339; *Osborn v. Ala. S. & W. Co.*, 135 Ala. 577.

SAYRE, J.—Day brought this action, as trustee in bankruptcy of the estate of W. C. Harmon, against the Home Insurance Company on a policy insuring a stock of merchandise against loss by fire. Defense was interposed in the way of a plea setting up a breach of the covenant contained in the "iron-safe clause" of the policy. The covenant will be stated by the reporter. The plea was that the covenant had been broken in this: "That the insured had not taken a complete itemized inventory of stock on hand within 12 calendar months prior to the date of the policy, and failed to take such inventory 30 days after the issuance of said policy." Confessing this plea, plaintiff sought to avoid its effect in several special replications which put forward the propositions, to state them generally in the language of appellant's brief, that where a merchant who has been in business for less than 12 months keeps a part of his stock of goods in a warehouse distant from the store in which he does business, the goods remaining unpacked and in the boxes in which they have been received from jobbers, and being removed from time to time as needed to replenish the active stock on his shelves, the iron-safe clause in a policy of insurance on the stock in the warehouse does not require that an inventory be kept, or, if it does, the requirement is substantially met when the insured keeps all original invoices and a detailed account of all sales.

The circumstances stated as conditions of appellant's first alternative contention are not sufficient to require or permit a declaration that the covenant for an inventory has no office to perform in the policy of insurance. The clause is a perfectly reasonable condition, and is binding on the assured, in the absence of fraud.—*Georgia Home Ins. Co. v. Allen*, 128 Ala. 451, 30 South. 537; Cooley's Ins. Briefs, 1814. In general, contracts of insurance are construed most strongly against the insurer; but where there is no occasion for construction, such contracts must be enforced according to their clear and unambiguous meaning. There is no authority in the courts, on the supposition that the purposes which the parties intended to secure may have been unnecessary or as well secured by other means to disregard the valid requirements and conditions of such contracts, or to construct by implication or otherwise, a new agreement in place of that deliberately made by the parties.—*Dwight v. Insurance Co.*, 103 N. Y. 346, 8 N. E. 654, 57 Am. Rep. 729. But appellant contends that his invoices, plus the books, constituted means of ascertaining the loss and must be taken as a substantial compliance with the requirement of an inventory. Defendant company had stipulated for both inventory and books, and it is clear that both together constituted an important safeguard against fraud, so that the court has no authority to dispense with either. The contention amounts therefore to just this: That under the peculiar conditions the keeping of the invoices was a substantial compliance with the stipulation for an inventory. An "inventory" means a list made by a merchant of the goods in his store, and the requirement of the policy was that the insured should take a complete itemized inventory of stock on hand within 30 days. Such an inventory not only would furnish evidence of

what the stock contained at the time, but provided a starting point, for the estimate to be based upon the transactions shown by the inventory and the books. An "invoice" is also a list of goods, but it is prepared by the consignor at the point of shipment. It does not show that the goods therein listed have reached the consignee. Nor is it to be expected that any one invoice should ever be the equivalent of an inventory. Possibly we might concede that in exceptional cases invoices may serve the purpose of an inventory. Such was the case in *Ruffner v. Dutchess Ins. Co.*, 59 W. Va. 432, 53 South. 943, 115 Am. St. Rep. 924, 8 Ann. Cas. 866, where it was held that the bills showing a complete list of all the goods put into a new store within a few days before the issuance of the policy constituted an inventory in substance. But the court said: "Of course, the invoices would not constitute an inventory in the case of a store which has been running for a considerable time. They would not afford any basis upon which to begin the estimate, but in the case of a new store starting simultaneously with the issuance of the policy, or practically so the first bill constitutes as good a basis for the beginning of the estimate as an inventory could possibly afford." To the same effect is *Queen of Arkansas Ins. Co. v. Forlines*, 94 Ark. 227, 126 S. W. 719, in which the language of the court was that " the plaintiff had been in business such a short time that the invoices of the goods first bought by him constituted in effect an itemized inventory of his stock." In *McNutt v. Virginia Ins. Co.* (Tenn.) 45 S. W. 61, cited by appellant, a different question was presented. In that case the inventory had been taken as provided by the policy. On the day before the fire the insured had been taking a new inventory, in the same book, which was not completed. Inadvertently the book was left

out of the safe and destroyed. The court held that the accidental destruction of the inventory did not forfeit the insurance. The adjudications in these cases seem to take liberties with the contracts which the parties had made for themselves; but we need neither express nor withhold approval since the cases may be substantially differentiated on their facts from the case at bar. Other cases cited by appellant are in point only to the extent that they hold in a general way that promissory warrants are often conditions subsequent, and courts should apply to them the doctrine that obtains in adjudging forfeitures, which means, we take it, that the court will hold such conditions satisfied by substantial compliance. No case that we have seen goes to the length of holding a series of separate invoices, covering a considerable period of time during which many transactions may have been had, may by the insured be made to do service for the itemized inventory demanded by the insurer as a condition of liability and yielded by the insured in the beginning as a legitimate and reasonable stipulation. Now appellant's replications were so framed that the invoices of which they speak, and upon which he relied as a substantial equivalent for the inventory which he agreed to take within 30 days, may have been strung along over a time largely in excess of the 30-day period stipulated for the taking of an inventory in any event, and, if the policy sued on is to be taken as dated from the time when plaintiff's assignor began business, then the better part of a year. That was not a compliance with the contract on the part of the insured, and any liberality of construction which would dispense with its plain terms in favor of the insured would make a contract for the parties which they saw fit not to make for themselves. There was no error in sustaining demurrers to those replications going to

the points discussed above.—*Southern Fire Ins. Co. v. Knight*, 111 Ga. 622, 36 S. E. 821, 52 L. R. A. 70, 78 Am. St. Rep. 216; *Fire Ass'n of Phila. v. Masterson*, 25 Tex. Civ. App. 518, 61 S. W. 962; *Roberts v. Sun Mutual Ins. Co.*, 19 Tex. Civ. App. 338, 48 S. W. 559; *St. Landry Co. v. New Hampshire Ins. Co.*, 114 La. 146, 38 South. 87, 3 Ann. Cas. 821; 2 Cooley's Ins. Briefs, 1820.

Several of the special replications set up a waiver of the alleged ·breach of the iron-safe clause in that defendant, after knowledge that the insured had not taken an inventory as required by the iron-safe clause of the policy, recognized and treated the policy as binding and entered into negotiations with plaintiff, as receiver in bankruptcy of the estate of the insured, for an adjustment of the loss, in consequence of which negotiations the said receiver incurred much trouble and expense. Defendant's special rejoinder as amended brought forward a nonwaiver agreement entered into between the insured and the insurer after the loss and in view of a proposed investigation of the fire and a determination of the amount of the loss. The point taken against the rejoinder is that, after proceedings in bankruptcy have been commenced, the bankrupt can do nothing in derogation of the interests of the estate. If, at the time the nonwaiver agreement was entered into—that is, at a time between the commencement of the bankruptcy proceedings and the appointment of a receiver—the power to make such agreement resided anywhere, it was with the parties to this suit. The amendment rejoinder makes the receiver, plaintiff here, as effectually a party as if he had ·joined in the paper writing which witnessed the agreement as between the insurer and the insured bankrupt. There was no necessity that the agreement should be reduced to writing.

The amended rejoinder avers: "That the said agreement was signed by Harmon in the presence of the said J. L. Day, receiver, and under the advice of the said Day, and was so signed after the defendant's adjuster had stated to the said Harmon, in the presence of the said Day, that he would not proceed in the investigation of the loss until the defendant was protected against waivers of forfeiture by agreement." The defendant company had a right to investigate the loss without waiving forfeitures; but in view of the facility with which the courts have predicated waivers on the slightest inconvenience caused to the insured, prudence required the nonwaiver agreement if in fact there was no intent to waive. On the facts stated in the rejoinder we do not perceive that the nonwaiver agreement was in derogation of any just interest of the estate. The question of forfeiture was an open one. If there had been a forfeiture, the estate had no just claim to be prejudiced. If, on the contrary, there had been no forfeiture, the agreement operated for the benefit of the estate by expediting a just estimate of the loss. Of such an agreement we think it may be safely said that it estopped the estate and those representing it to subsequently deny its force and effect in a suit brought for the benefit of the estate.

On the first decision of this case it was held that demurrers to plaintiff's several special replications had been properly sustained. On rehearing the other members of the court are of opinion that the demurrer to special replication C should have been overruled. They put their conclusion on the averment of the replication that, at the time of the transfer of the policy, defendant's agent had notice of the fact that no inventory would be kept. This they hold amounted to a modification of the original policy-contract effective to elimi-

[Alabama Western Railroad Co. v. Downey.]

nate therefrom the stipulation for an inventory. On this point I am unable to agree, but refrain from any statement of my reasons. It results from the prevailing opinion that the judgment must be reversed.

Reversed and remanded.

SIMPSON, ANDERSON, McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur.

SAYRE, J., dissents in part.

DOWDELL, C. J., not sitting.